No. 86,220

In the Matter of TERRI STROH TWEEDLY, *Respondent.*

(20 P.3d 1245)

Opinion filed April 20, 2001.

*Alexander M. Walczak,* deputy disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

*Terri Stroh Tweedly,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the Disciplinary Administrator's office against Terri Stroh Tweedly, of Overland Park, an attorney admitted to the practice of law in Kansas.

A formal complaint was filed against respondent on July 11, 2000, alleging violations of KRPC 1.3 (2000 Kan. Ct. R. Annot. 310) (diligence), 1.4 (2000 Kan. Ct. R. Annot. 320) (communication), 1.15(b) (2000 Kan. Ct. R. Annot. 360) (safekeeping of property), 1.16(a)(3) (2000 Kan. Ct. R. Annot. 371) (failure to withdraw), 1.16(d) (2000 Kan. Ct. R. Annot. 371) ( failure to withdraw without adverse effect on clients' interest), 3.2 (2000 Kan. Ct. R. Annot. 382) (expediting litigation), 8.1(b) (2000 Kan. Ct. R. Annot. 416) (failure to respond), and Supreme Court Rule 207 (2000 Kan. Ct. R. Annot. 237) (failure to aid).

A formal hearing was held before a panel of the Kansas Board for Discipline of Attorneys on September 12, 2000. Respondent's facsimile request to continue the hearing for 6 weeks to the presiding officer on September 8, 2000, contending she was not mentally or emotionally prepared for the hearing and that she did not have funds to hire counsel, was denied. The office of the Disciplinary Administrator appeared by and through Alexander M. Walczak, Deputy Disciplinary Administrator. The respondent failed to appear.

Exhibits were admitted and testimony was received. Thereupon, after reviewing the exhibits and hearing the testimony presented, the hearing panel found by clear and convincing evidence the following facts:

"1. Terri Stroh Tweedly, (hereinafter 'the Respondent') is an attorney at law, Kansas Registration No. 16258. Her last registration address with the Clerk of the Appellate Courts of Kansas is [in] Overland Park, Kansas, . . . The Respondent was admitted to the practice of law in the state of Kansas on October 1, 1993.

## "Case No. DA7521: M.L. Complaint

"2. On December 10, 1998, M.L. retained the Respondent to file and prosecute a termination of parental rights case. At that time, the natural father of the child was incarcerated. M.L. paid the Respondent a retainer of $500.00. The Respondent prepared and filed a motion for termination of parental rights, Wyandotte County District Court case number 98D4165. After filing the initial pleadings, the Respondent failed to keep appointments, failed to return telephone calls, and failed to obtain service on the incarcerated defendant.

"3. After communication with the Respondent became difficult, M.L. asked the Respondent to provide an accounting of the retainer, to return the unused portion of the retainer, to formally withdraw from the representation, and to return her file. The Respondent failed to comply with M.L.'s requests or to otherwise communicate with her.

"4. On June 30, 1999, M.L. hired Howard E. Bodney to complete the termination of parental rights case. At that time, Mr. Bodney requested that the Respondent forward the retainer paid to M.L. and M.L.'s file to his attention. On one occasion, the Respondent contacted Mr. Bodney. However, the Respondent failed to comply with his requests.

"5. On March 31, 1999, M.L. made a formal complaint with the Disciplinary Administrator's office, regarding the Respondent's representation in the termination of parental rights case. Thereafter, on November 19, 1999, Mr. Bodney also filed a formal complaint with the Disciplinary Administrator's office.

## "Case No. DA7739: Schudel Complaint

"6. On December 7, 1998, David Schudel made a formal complaint with the Disciplinary Administrator's office regarding the Respondent. In that complaint, Mr. Schudel complained that the Respondent failed to provide diligent representation and failed to maintain adequate communication. Thereafter, the Respondent contacted Mr. Schudel and offered to continue to represent Mr. Schudel if he would withdraw his complaint. Mr. Schudel agreed.

"7. On April 1, 1999, the Respondent represented Mr. Schudel, *via* telephone, at a Nevada child support hearing. At that time, the Nevada authorities requested certain documentation from Mr. Schudel. The documentation was to establish how much child support Mr. Schudel had paid to date. Mr. Schudel provided the documentation to the Respondent. After the Nevada authorities received the documentation, the Nevada authorities were to make a settlement offer to Mr. Schudel to settle the child support issue. Apparently, the Respondent did not forward the documentation to the Nevada authorities.

"8. The Respondent failed to keep Mr. Schudel advised of the status of the Nevada court proceedings and failed to return telephone calls to Mr. Schudel. When attempting to purchase an automobile, Mr. Schudel learned that there was a lien against him regarding the child support liability. However, Mr. Schudel had heard nothing from the Respondent or from the authorities in Nevada regarding the settlement amount.

"9. On November 18, 1999, Mr. Schudel forwarded a second letter of complaint. In Mr. Schudel's second letter of complaint to the Disciplinary Administrator's office. Mr. Schudel requested that the Respondent return his file to allow him to complete the child support matter. To date, the Respondent has failed to return Mr. Schudel's file.

## "Case No. DA 7773: Dryden Complaint

"10. On July 6, 1999, Steve Dryden retained the Respondent to file and prosecute a motion to modify child support. Mr. Dryden paid the Respondent a retainer of $1,000.00. After filing the motion, the Respondent failed to return numerous telephone calls. On October 5, 1999, the Respondent contacted Mr. Dryden and told him that the hearing scheduled for October 6, 1999, would have to be canceled because she had not received certain paperwork from opposing counsel. On October 19, 1999, the Respondent again called Mr. Dryden to notify him that she had to cancel the hearing scheduled for October 20, 1999, because she still had not received the necessary documentation.

"11. At that time Mr. Dryden and the Respondent agreed that a court hearing would be not scheduled until they had received the paperwork from opposing counsel. Because he had not heard from the Respondent for a period of time, Mr. Dryden sent the Respondent a letter on November 2, 1999. The Respondent did not respond to Mr. Dryden's letter.

"12. Then, on November 18, 1999, because he had still not heard from the Respondent, Mr. Dryden sent the Respondent a second letter. In that letter, Mr. Dryden requested that the Respondent prepare and file a motion to withdraw, forward a check to him for the remaining retainer funds, and return his complete file. Mr. Dryden informed the Respondent that he would pick up those items from the Respondent's office on November 29, 1999. Additionally, Mr. Dryden informed the Respondent that, if those items were not available, then he would forward a letter of complaint to the bar authorities.

"13. On November 29, 1999, Mr. Dryden went to the Respondent's office to pick up the unearned fees and his complete file. At that time, the Respondent was not in her office. The office receptionist did not have any materials prepared for Mr. Dryden.

"14. Unbeknownst to Mr. Dryden, a hearing was scheduled for December 8, 1999. The hearing was not held, because the Respondent had contacted opposing counsel and the court and canceled the hearing because her mother was ill. The

Respondent failed to inform Mr. Dryden that the hearing had been scheduled and canceled.

"15. Without forwarding Mr. Dryden's file or a check for the remaining retainer funds, on December 11. 1999, the Respondent sent Mr. Dryden a copy of a motion to withdraw.

"16. On December 21, 1999, Mr. Dryden contacted the court and learned that a hearing date of January 31, 2000, had been previously scheduled.

"17. On December 23, 1999, Mr. Dryden forwarded his letter of complaint to the Disciplinary Administrator's office.

## "Case No. DA7778: Rivers Complaint

"18. On September 21, 1999, Steve Rivers retained the Respondent to defend him in an action for divorce. At that time, Mr. Rivers provided the Respondent with a retainer in the amount of $500.00.

"19. The Respondent repeatedly assured Mr. Rivers that she would be preparing and filing responsive pleadings. On occasion, the Respondent showed Mr. Rivers drafts of pleadings. However, the Respondent never filed any pleadings in behalf of Mr. Rivers.

"20. Mr. Rivers made numerous attempts to contact the Respondent. At the hearing on the matter, Mr. Rivers estimated that he telephoned the Respondent on approximately 30 to 40 occasions. However, the Respondent failed to return a vast majority of the telephone calls and failed to respond to written correspondence.

"21. On December 28, 1999, Mr. Rivers made a formal complaint with the Disciplinary Administrator's office about the Respondent's inaction with regard to his case.

"22. On February 7, 2000, the divorce case proceeded to hearing. At that hearing, the Respondent failed to appear and Mr. Rivers appeared *pro se*. The Respondent did not withdraw from the representation, nor did she return any unused retainer funds.

## "Case No. DA 7780: Fraser Complaint

"23. The Respondent began representing Melinda Fraser in 1997. During the course of that representation, Ms. Fraser paid the Respondent approximately $1,500.00 for services rendered. Ms. Fraser was pleased with much of the representation by the Respondent.

"24. The Respondent failed to remain in contact with Ms. Fraser. Therefore, on January 11, 2000, Ms. Fraser informed the Respondent that her services were no longer required. Ms. Fraser requested that the Respondent return Ms. Fraser's file and provide a final accounting of the funds paid to the Respondent. The Respondent failed to return Ms. Fraser's file and failed to provide a final accounting. Thereafter, Ms. Fraser retained new counsel. Ms. Fraser's new attorney sent

a letter to the Respondent requesting the transfer of Ms. Fraser's file. The Respondent did not respond to Ms. Fraser's new attorney's request for the file.

"25. On January 5, 2000, Ms. Fraser forwarded a letter of complaint to the Disciplinary Administrator's office.

## "Case No. DA 7796: Kistler Complaint

"26. In the fall of 1998, Laurie Kistler retained the Respondent to represent her in a post-divorce matter. At that time, Ms. Kistler paid the Respondent a retainer of $1, 000.00.

"27. At the time the post-divorce matter was instituted, Ms. Kistler, her former husband, and their children were all residents of Johnson County. However, the original divorce case had occurred in St. Louis County, Missouri. The Johnson County, Kansas, District Court determined that the post-divorce matter should be handled by the courts in St. Louis County, Missouri. Because she is licensed to practice law in Missouri, as well as in Kansas, the Respondent assured Ms. Kistler that she would file the appropriate pleadings in St. Louis County, Missouri.

"28. Thereafter, the Respondent failed to maintain adequate communication with Ms. Kistler. Additionally, the Respondent told Ms. Kistler that she had filed pleadings in behalf of Ms. Kistler in St. Louis County, Missouri. However, the Respondent did not do so.

"29. After communicating with the Respondent became difficult, Ms. Kistler dismissed the Respondent as her attorney and requested that the Respondent return all of her files. Additionally, Ms. Kistler hired new counsel to pursue the post-divorce action in St. Louis County, Missouri. Ms. Kistler and her new attorney sent the Respondent written correspondence asking for the return of Ms. Kistler's file. The Respondent did not comply with these requests.

"30. On January 21, 2000, Ms. Kistler forwarded a formal complaint, regarding the Respondent's misconduct, to the Disciplinary Administrator's office.

"31. During the course of the investigation of this matter, J. Nicholas Badgerow presented the Respondent with a subpoena for Ms. Kistler's file. The Respondent did provide a portion of Ms. Kistler's file pursuant to the subpoena.

## "Case No. 7820: Worley Complaint

"32. In January, 1999, Larry M. Worley retained the Respondent to terminate child support. Mr. Worley paid the Respondent a $500.00 retainer. Thereafter, on numerous occasions. Mr. Worley attempted to contact the Respondent by telephone. The Respondent failed to return Mr. Worley's many telephone calls.

"33. After a number of hearings had been continued, a hearing was scheduled for February 16, 2000.

"34. Because the Respondent had not heard from the Respondent for a period of time, on February 8, 2000, Mr. Worley filed a complaint with the Disciplinary Administrator's office concerning the Respondent's misconduct.

"35. Thereafter, on February 16, 2000, the Respondent appeared at the hearing, one hour late. Because the parties agreed to terminate the child support, the matter was again continued to allow the Respondent to prepare a document setting forth the agreement. The Respondent failed to prepare the appropriate paperwork.

"36. At the time of the hearing on the Formal Complaint, the matter was not resolved. Mr. Worley still needs to have the agreement of the parties formally drawn up to terminate child support. A court hearing is scheduled for September, 2000.

"37. On July 7, 1999, Harry William Otto retained the Respondent to file a divorce case in his behalf. Mr. Otto paid the Respondent $1,152.00. Two weeks after the Respondent was retained, Mr. Otto reconciled with his wife and notified the Respondent that he wished to discontinue the divorce proceedings. It appears from the record that the Respondent did not file any pleadings in behalf of Mr. Otto.

"38. Thereafter, in September, 1999, Mr. Otto requested that the Respondent prepare an accounting of the retainer and that any unused fees be returned to Mr. Otto. The Respondent assured Mr. Otto that she would be forwarding the accounting and the refund. However, the Respondent failed to provide the accounting and return the unused portion of the retainer.

"39. Mr. Otto called the Respondent's office on several occasions again requesting an accounting of the retainer and a return of unearned fees. The Respondent failed to return Mr. Otto's telephone calls. Mr. Otto was unable to personally speak with the Respondent until November 24, 1999. At that time, the Respondent again assured Mr. Otto that she would be forwarding the accounting and refund to Mr. Otto. The accounting and refund was not forthcoming. Thereafter, Mr. Otto telephoned the Respondent on five additional occasions. These attempts to contact the Respondent were fruitless.

"40. On January 31, 2000, Mr. Otto filed a written complaint with the Disciplinary Administrator's office regarding the Respondent.

"41. As of the date of the hearing on the Formal Complaint, the Respondent had not forwarded an accounting and refund of the unused retainer funds to Mr. Otto.

## "Case No. DA 7836: Burger Complaint

"42. On January 22, 1999, Donna L. Burger retained the Respondent to provide representation in a modification of child support and collection of child support in arrears. At that time, Ms. Burger provided the Respondent with a $500.00 retainer. In Ms. Burger's behalf, and in an attempt to reach a settlement agreement, the Respondent wrote three letters to Ms. Burger's ex-husband's attorney. Because attempts to settle the matter were unsuccessful, Ms. Burger and the Respondent decided to proceed to a contested hearing.

"43. Thereafter, Ms. Burger placed over 50 telephone calls to the Respondent. The Respondent did not return the telephone calls. On November 22, 1999, the Respondent finally returned Ms. Burger's telephone calls. At that time, the Respondent told Ms. Burger that she was taking Ms. Burger's file with her over the Thanksgiving holiday, and would send *via* facsimile, certain documents on November 29, 1999.

"44. The telephone call from the Respondent on November 22, 1999, was the last contact Ms. Burger had with the Respondent.

"45. Ms. Burger sent *via* facsimile two letters terminating the Respondent's employment, requesting a billing statement, and requesting the return of her file. The Respondent never filed a motion to withdraw from the representation of Ms. Burger. Additionally, the Respondent failed to provide a billing statement, a refund, or Ms. Burger's file.

"46. On February 19, 2000, Ms. Burger filed a complaint with the Disciplinary Administrator's office.

"47. After filing her complaint, Ms. Burger hired new counsel. Ms. Burger's divorce case is still pending.

## "Case No. DA 7862: Ivy Complaint

"48. In June or July, 1999, Douglas A. Ivy retained the Respondent to provide representation in a divorce case. At that time, Mr. Ivy provided the Respondent with a retainer of $1,100.00. (Mr. Ivy charged the retainer to his credit card, and continues, to date, to pay on the balance.) Shortly after she was hired, the Respondent filed a motion in behalf of Mr. Ivy. Subsequent to filing that motion, the Respondent took no additional action in Mr. Ivy's divorce case.

"49. Mr. Ivy began to experience great difficulty contacting the Respondent. Mr. Ivy telephoned the Respondent over 100 times, wrote the Respondent a note and a letter, and visited the Respondent's office, in attempts to contact the Respondent. The Respondent made no attempts to contact Mr. Ivy.

"50. At the hearing on the divorce, the Respondent failed to appear. As a result, Mr. Ivy represented himself in the formal proceedings.

"51. Mr. Ivy made no requests for a refund of unearned fees and the return of his file, because he was unable to contact the Respondent.

"52. On March 9, 2000, Mr. Ivy forwarded a letter of complaint to the Disciplinary Administrator's office.

## "Case No. DA 7867: Gerred Complaint

"53. On August 5, 1999, James Gerred retained the Respondent to provide representation in a paternity case and to obtain the return of his passport, which had been impounded by the State Department. At that time, Mr. Gerred paid the Respondent a retainer of $1,000.00.

"54. After being retained, the Respondent reported to Mr. Gerred that she had prepared certain documents in his behalf. Mr. Gerred traveled to the Respon-

dent's office and signed the documents. Four months later, the Respondent filed the documents with the court. However, the Respondent never provided copies of the documents to Mr. Gerred. The Respondent did nothing else to resolve the paternity case or to obtain the return of Mr. Gerred's passport.

"55. Mr. Gerred attempted to contact the Respondent on a number of occasions. The Respondent infrequently returned Mr. Gerred's telephone calls. After speaking to the Respondent for a brief time, in February, 2000, the Respondent assured Mr. Gerred that she would immediately return the call. Mr. Gerred never heard from the Respondent again.

"56. After communication with the Respondent became impossible, Mr. Gerred requested that the Respondent return his retainer. The Respondent never provided Mr. Gerred with a refund of unearned fees. Additionally, the Respondent never filed a motion to withdraw as counsel for Mr. Gerred.

"57. On March 18, 2000, Mr. Gerred sent a letter to the Disciplinary Administrator's office complaining of the representation provided by the Respondent.

"58. Mr. Gerred was able to obtain the return of his passport and resolve the paternity case with the assistance of new counsel.

## "Case No. DA 7896: Morgan Complaint

"59. In November, 1998, Linda R. Morgan retained the Respondent to provide representation in an action for divorce. Ms. Morgan paid the Respondent a retainer of $1,250.00. Although the divorce action was promptly filed, the Respondent failed to obtain service on Ms. Morgan's ex-husband until February 16, 1999.

"60. After the action was completed, the parties were ordered to prepare proposed journal entries. The Respondent failed to provide the court with a proposed journal entry in behalf of Ms. Morgan. The court signed the journal entry prepared by Ms. Morgan's ex-husband's attorney. As a result, the child support commenced on a date later than originally set, and a debt that Ms. Morgan's ex-husband was ordered to pay became the responsibility of Ms. Morgan.

"61. On many occasions, Ms. Morgan requested that the Respondent provide her with an accounting of the retainer funds. The Respondent failed to provide such an accounting to Ms. Morgan.

"62. From July, 1999, to April 2000, the Respondent failed to return over 100 telephone calls from Ms. Morgan.

"63. On April 12, 2000, the Disciplinary Administrator's office received Ms. Morgan's letter of complaint regarding the Respondent.

## "Investigations

"64. Patricia A. Bennett was appointed to investigate the M.L. complaint. During the course of her investigation, from May, 1999, through December, 1999, Ms. Bennett sent the Respondent four or five letters. In each letter, Ms. Bennett requested that the Respondent respond to the initial complaint in writing. At one point, the Respondent left a voice mail message for Ms. Bennett. Other than the

one voice mail message, the Respondent did not contact Ms. Bennett regarding the investigation. Additionally, the Respondent did not respond in writing to the initial complaint as requested by Ms. Bennett.

"65. J. Nicholas Badgerow was appointed to investigate the remaining eleven complaints. The Respondent and Mr. Badgerow scheduled a meeting to discuss the pending complaints on February 10, 2000. One hour before the meeting, the Respondent called, canceled the meeting, and rescheduled the meeting for February 14, 2000.

"66. On February 14, 2000, the Respondent called, canceled the meeting, and rescheduled the meeting for February 18, 2000.

"67. On February 18, 2000, the Respondent called, canceled the meeting, and rescheduled the meeting for February 25, 2000.

"68. On February 25, 2000, the Respondent appeared in person at Mr. Badgerow's office to discuss the pending complaints. At that meeting, Mr. Badgerow served the Respondent with a subpoena. The subpoena commanded the Respondent to provide Ms. Kistler's file forthwith.

"69. At the time of the meeting, the following complaints were pending and were discussed by Mr. Badgerow and the Respondent:

> Case No. DA7739, David Schudel;
> Case No. DA 7773, Steve Dryden;
> Case No. DA 7778, Steve Rivers;
> Case No. DA 7796, Laurie Kistler;
> Case No. DA7820, Larry M. Worley; and
> Case No. DA 7822, Harry William Otto.

"70. Also, during that meeting, Mr. Badgerow and the Respondent discussed the difficulties that the Respondent had been experiencing. The Respondent indicated that her parents had had some health problems, that she was an only child, and that her parents depend upon her to assist them. Additionally, the Respondent indicated that she had a bout of the flu. The Respondent stated that she took a leave of absence without telling anyone, from October 1, 1999, through January 19, 2000. The Respondent did not provide any explanation regarding her inaction prior to October 1, 1999, or after January 19, 2000.

"71. During the meeting, Mr. Badgerow did not observe anything that would lead him to believe that the Respondent suffered from a chemical dependency or from a mental illness that was impairing her ability to practice law. However, because the acts and omissions described in the various complaints he was investigating were consistent with a person who was suffering from chemical dependence or from a mental illness, Mr. Badgerow offered the assistance of the Impaired Lawyer's Committee. Additionally, Mr. Badgerow expressed his belief that her friends and other peers in the legal community would help her if she needed assistance. The Respondent did not seek the assistance that Mr. Badgerow offered.

"72. The Respondent assured Mr. Badgerow that her problems were behind her and that she was able to resume practicing law. Additionally, the Respondent

assured Mr. Badgerow that she would be preparing billing statements for the complainants and forwarding any unused retainers during the following weekend. Mr. Badgerow took the Respondent at her word, and telephoned complainants to let them know refunds would be forthcoming.

"73. Later that day, pursuant to the subpoena, the Respondent returned to Mr. Badgerow's office and provided him with Ms. Kistler's file.

"74. Mr. Badgerow, on many occasions, requested that the Respondent respond to each complaint in writing. The Respondent did not timely respond to any of Mr. Badgerow's requests. The Respondent provided written responses to only three of the initial complaints.

"75. On February 24, 2000, the Respondent forwarded to Mr. Badgerow an untimely response to Mr. Dryden's letter of complaint. In her written response, the Respondent detailed the medical difficulties her mother experienced. Additionally, the Respondent indicated that she would be 'furnishing Mr. Dryden with a billing statement in the near future.' Also, the Respondent agreed with Mr. Dryden that she did not use all of the retainer. The Respondent assured Mr. Badgerow that she would make an appropriate refund. *See* Disciplinary Administrator's Exhibit 11. To date, the Respondent has not provided Mr. Dryden with a billing statement or refund.

"76. Also, on February 24, 2000, the Respondent forwarded to Mr. Badgerow an untimely response to Mr. Rivers' letter of complaint. The Respondent's response to Mr. Rivers' letter of complaint included the same explanations for her dilatory conduct. The Respondent acknowledged that Mr. Rivers had to represent himself in the divorce proceeding. Again, the Respondent indicated that she would be providing a billing statement to Mr. Rivers. The Respondent never provided the billing statement to Mr. Rivers.

"77. Additionally, on February 24, 2000, the Respondent forwarded to Mr. Badgerow an untimely written response to Ms. Fraser's letter of complaint. Although, the Respondent admitted that Ms. Fraser was unable to contact the Respondent over the holidays, she did not admit to any other wrongdoing. The Respondent did not acknowledge that Ms. Fraser requested the return of her file and a final accounting. The Respondent, again, assured Mr. Badgerow that she would be providing a final accounting to Ms. Fraser in the 'near future.' The Respondent never provided the final accounting.

"78. Although requested to do so by Mr. Badgerow and the Disciplinary Administrator's office, the Respondent failed to respond in writing to the following complaints:

> Case No. DA7521, M.L.;
> Case No. DA 7739, David Schudel;
> Case No. DA 7796, Laurie Kistler;
> Case No. DA7820, Larry M. Worley;
> Case No. DA 7822, Harry William Otto;
> Case No. DA7836, Donna L. Burger;

Case No. DA7862, Douglas A. Ivy;
Case No. DA7867, James Gerred; and
Case No. DA7896, Linda R. Morgan.

79. Several complaints were filed after the Respondent met with Mr. Badgerow. Those complaints include Case No. DA7836, Donna L. Burger; Case No. DA7862, Douglas A. Ivy; Case No. DA7867, James Gerred; and Case No. DA7896, Linda R. Morgan.

"80. Because the Disciplinary Administrator's office continued to receive complaints regarding the Respondent, Stanton A. Hazlett, Disciplinary Administrator, contacted the Honorable Patrick D. McAnany. Mr. Hazlett requested that Judge McAnany invoke the provisions of Kan. Sup. Ct. R. 221 with regard to the Respondent. *See* Disciplinary Administrator's Exhibit 30. After reviewing an affidavit provided by Mr. Badgerow, Judge McAnany agreed to invoke Kan. Sup. Ct. R. 221. *See* Disciplinary Administrator's Exhibits 31 and 32.

"81. Judge McAnany contacted attorney Joseph R. Horgan for assistance. Pursuant to Administrative Order No. 00-5, Judge McAnany instructed Mr. Horgan to go to the Respondent's office, with the assistance of the Sheriff's department, and seize all client files and mail. *See* Disciplinary Administrator's Exhibit 32. On May 26, 2000, Mr. Horgan, with the assistance of the Sheriff's department, executed Judge McAnany's order.

"82. After seizing the client files and mail, Mr. Horgan screened each file, looking for time-sensitive matters and looking for complainants' files. Mr. Horgan was able to find five of the complainants' files: Ivy (DA7862), Burger (DA7836), Gerred (DA7867), Worley (DA7820), and Morgan (DA7896). Overall, Mr. Horgan took possession of approximately 60 to 70 client files.

"83. Finally, Mr. Horgan attempted to contact each of the clients listed on the files to notify them that if they needed their files, the files were in his possession. Mr. Horgan discovered that, in many of the files, a journal entry had not been prepared. In those cases, Mr. Horgan attempted to let the clients know that they needed to seek alternative counsel. On occasion, Mr. Horgan contacted the opposing counsel and requested that they prepare a journal entry to complete the case. Mr. Horgan was able to get in touch with approximately 25 clients.

"84. Pursuant to the order of Judge McAnany, at the time of the hearing on the Formal Complaint, Mr. Horgan still had possession of the Respondent's clients' files.

## Formal Proceedings

"85. On July 11, 2000, Alexander M. Walczak, Deputy Disciplinary Administrator, filed a Formal Complaint in the above-captioned case. Also on July 11, 2000, Mr. Walczak filed a Notice of Hearing, setting the hearing on the Formal Complaint in the above-captioned case for September 12 and 13, 2000.

"86. The Formal Complaint and Notice of Hearing were sent to the Respondent, *via* certified mail, to the Respondent's last registration address. On July 18,

2000, the Respondent received the Formal Complaint and Notice of Hearing after it had been forwarded to her home address. *See* Disciplinary Administrator's Exhibit 33.

"87. The Respondent failed to file a written Answer to the Formal Complaint as required by Kan. Sup. Ct. R. 211(b).

"88. On August 7, 2000, David L. Wood, Special Investigator with the Disciplinary Administrator's office went to the Respondent's residence in Olathe, Kansas. At that time, the Respondent acknowledged that she had received a copy of the Formal Complaint and Notice of Hearing. The Respondent informed Mr. Wood that September 12 and 13, 2000, were "not good dates for her." Mr. Wood provided the Respondent with information on how to contact Mr. Walczak to discuss the procedure for requesting a continuance. Mr. Wood and the Respondent made arrangements to meet on August 9, 2000, to discuss the complaints.

"89. On August 9, 2000, the Respondent telephoned the Disciplinary Administrator's office and canceled the meeting with Mr. Wood scheduled that day. On August 10, 2000, Mr. Wood and the Respondent rescheduled the meeting for August 16, 2000.

"90. On August 16, 2000, the Respondent telephoned the Disciplinary Administrator's office and canceled the meeting with Mr. Wood scheduled that day. The Respondent did not call to reschedule that meeting.

"91. On September 6, 2000, the Respondent telephoned Mr. Walczak and requested that the hearing scheduled for September 12 and 13, 2000, be continued. Mr. Walczak informed the Respondent that her request for a continuance needed to be made to Debra E. Jones, Presiding Officer of the Hearing Panel. Additionally, Mr. Walczak informed the Respondent that he would oppose the request for a continuance because the hearing had been scheduled for some time, because the Respondent had failed to file an Answer, because numerous witnesses were to be called with several traveling from great distances to attend, and because the request was made untimely. *See* Disciplinary Administrator's Exhibit 34.

"92. On September 8, 2000, at 3:58 p.m., the Respondent sent Ms. James a letter, *via* facsimile, requesting that the hearing on the Formal Complaint be continued for a period 'of at least six (6) weeks.' The Respondent indicated that she was not mentally or emotionally prepared for the hearing. Additionally, the Respondent indicated that she did not have the funds to hire counsel. The Respondent also related certain personal and medical problems that she had recently experienced. Finally, the Respondent asked Ms. James to reply at her earliest convenience.

"93. After receiving the letter from the Respondent, Ms. James attempted to contact the Respondent by telephone at the number provided on the letter on two occasions and left messages requesting that the Respondent return the calls. The Respondent failed to return Ms. James' telephone calls.

## "CONCLUSIONS OF LAW

"Based upon the above findings of fact, the Hearing Panel makes the following conclusions of law:

"1. Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a) Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last know office address.

. . . .

'(c) Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

*Id.* In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the Formal Complaint and Notice of Hearing, *via* certified United States mail, postage prepaid, to the address shown on the Respondent's most recent registration. . . .

"2. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. Because the Respondent failed to act with reasonable diligence and promptness in representing her clients, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"a. With regard to M.L. (DA7521), after filing the initial pleadings, the Respondent failed to obtain service on the incarcerated defendant and prosecute the motion for termination of parental rights.

"b. In DA7739, the complaint of Mr. Schudel, the Respondent failed to forward the documentation to the Nevada authorities.

"c. The Respondent failed to attend scheduled hearings and take any action on the motion to modify child support with regard to Mr. Dryden (DA7773).

"d. In DA7778, the Respondent failed to prepare and file responsive pleadings in Mr. Rivers' divorce proceeding.

"e. While the Respondent assured Ms. Kistler (DA7796) that she would file the appropriate pleadings in St. Louis County, Missouri, she did not do so.

"f. The Respondent appeared at hearings unreasonably late and the Respondent failed to prepare a simple pleading that would have resolved Mr. Worley's (DA7820) legal issue.

"g. In DA7836, the Respondent failed to take any action to modify the child support order or to collect child support in arrears in behalf of Ms. Burger.

"h. With regard to DA7862, the Respondent filed a motion, but failed to prosecute it in behalf of Mr. Ivy. Additionally, the Respondent failed to appear in behalf of Mr. Ivy at the hearing on the divorce.

"i. While the Respondent did prepare certain documents for Mr. Gerred's (DA7867) signature and filed the same four months later, the Respondent failed to take any other action to resolve the paternity case or to obtain the return of Mr. Gerred's passport.

"j. In Ms. Morgan's (DA7896) case, the Respondent took approximately three months to obtain service on Ms. Morgan's ex-husband. Additionally, despite being

ordered by the court to prepare a proposed journal entry, the Respondent failed to do so. As a result, to the detriment of Ms. Morgan, the court signed the journal entry prepared by Ms. Morgan's ex-husband's attorney.

"3. KRPC 1.4(a) provides:

'A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

*Id.* The Respondent failed to remain in reasonable contact with many of the complainants. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a) in the following instances:

"a. Shortly after M.L. (DA7521) hired the Respondent to prosecute a termination of parental rights case, the Respondent stopped returning telephone calls. Additionally, the Respondent failed to respond to a series of letters sent by Jason Miller in M.L's behalf.

"b. The Respondent failed to keep Mr. Schudel (DA7739) advised of the status of the Nevada court proceedings and failed to return telephone calls to Mr. Schudel.

"c. After filing a motion to modify child support, the Respondent failed to notify Mr. Dryden (DA7773) of scheduled court hearings, failed to return numerous telephone calls, and failed to answer letters from Mr. Dryden (DA7773).

"d. Mr. Rivers (DA7778) made approximately 30 to 40 attempts to contact the Respondent. The Respondent failed to return a vast majority of the telephone calls or to respond to letters sent by Mr. Rivers.

"e. The Respondent failed to maintain adequate communication with Ms. Kistler (DA7796).

"f. On numerous occasions, Mr. Worley (DA7820) attempted to contact the Respondent by telephone. The Respondent failed to return Mr. Worley's many telephone calls.

"g. Mr. Otto (DA7822) called the Respondent's office on several occasions requesting his refund. The Respondent failed to return Mr. Otto's telephone calls.

"h. Ms. Burger (DA7836) placed many telephone calls to the Respondent. The Respondent returned only one of Ms. Burger's telephone calls.

"i. Mr. Ivy (DA7862) experienced great difficulty contacting the Respondent. Mr. Ivy telephoned the Respondent, wrote the Respondent a note and a letter, and stopped by her office, in attempts to contact the Respondent. The Respondent [made] no attempts to contact Mr. Ivy.

"j. Mr. Gerred (DA7867) attempted to contact the Respondent on a number of occasions. The Respondent infrequently returned Mr. Gerred's telephone calls. The Respondent failed to provide Mr. Gerred with copies of documents filed in his behalf. After speaking to the Respondent for a brief time, in February, 2000, the Respondent assured Mr. Gerred that she would immediately return the call. Mr. Gerred never heard from the Respondent again.

"k. After the divorce was granted, the Respondent failed to return numerous telephone calls from Ms. Morgan (DA7896).

"4. KRPC 1.15(b) provides as follows:

'Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

*Id.* In this case, the Respondent violated this subsection by failing to render accountings and by failing to return unearned fees as requested by her clients. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.15(d).

"a. After communication with the Respondent became difficult. M.L. (DA7521) asked the Respondent to provide an accounting of the retainer, to return the unused portion of the retainer, and to return her file. The Respondent failed to comply with M.L.'s requests, in violation of KRPC 1.15(d).

"b. In Mr. Schudel's letter of complaint to the Disciplinary Administrator's office, Mr. Schudel requested that the Respondent return his file to allow him to complete the child support matter. To date, the Respondent has failed to return Mr. Schudel's file in violation of KRPC 1.15(d).

"c. Because he had not heard from the Respondent, Mr. Dryden (DA7773) sent the Respondent a letter requesting that the Respondent prepare and file a motion to withdraw, forward a check to him for the remaining retainer funds, and return his complete file. The Respondent failed to comply with Mr. Dryden's requests.

"d. Ms. Fraser (DA7780) requested that the Respondent return Ms. Fraser's file and provide a final accounting of the funds paid to the Respondent. The Respondent failed to return Ms. Fraser's file and failed to provide a final accounting.

"e. After communicating with the Respondent became difficult. Ms. Kistler (DA7796) and her subsequent counsel requested that the Respondent return all of Ms. Kistler's files. The Respondent did not comply with those requests.

"f. Mr. Otto (DA7822) requested that the Respondent prepare an accounting of the retainer and that any unused fees be returned to Mr. Otto. The Respondent failed to provide the accounting and return the unused portion of the retainer.

"g. Ms. Burger (DA7836) sent a letter to the Respondent requesting a return of her file and a refund of unearned fees. The Respondent failed to provide the refund or the file.

"h. After communication with the Respondent became impossible. Mr. Gerred requested that the Respondent return his retainer. The Respondent never provided Mr. Gerred with a refund of unearned fees.

"i. On many occasions, Ms. Morgan (DA7896) requested that the Respondent provide Ms. Morgan with a accounting of the retainer finds. The Respondent failed to provide such an accounting to Ms. Morgan.

"5. According to KRPC 1.l6(a)(3) 'a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the lawyer is discharged. . .' On several occasions, the complainants terminated the services of the Respondent. However, in each of the following cases, the Hearing Panel concludes that the Respondent failed to withdraw as counsel of record, in violation of KRPC 1.16(a)(3):

"a. M.L. (DA7521) asked the Respondent to formally withdraw from the representation. The Respondent failed to withdraw in violation of KRPC 1.16(a)(3).

"b. After Ms. Fraser (DA7780) fired the Respondent, the Respondent failed to file a motion to withdraw from the representation.

"c. After communicating with the Respondent became difficult, Ms. Kistler (DA7796) dismissed the Respondent as her attorney. The Respondent failed to file a motion to withdraw.

"d. Ms. Burger (DA7836) sent a letter to the Respondent terminating the Respondent's employment. The Respondent failed to file a motion to withdraw from the representation of Ms. Burger.

"e. Mr. Gerred (DA7867) terminated the Respondent's employment. Thereafter, the Respondent failed to file a motion to withdraw as counsel for Mr. Gerred.

"6. KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

*Id.* The Hearing Panel concludes that the Respondent violated KRPC 1.16(d) in the following cases:

"a. The Respondent ceased her representation of M.L. (DA7521). However, the Respondent did not take reasonable steps to protect M.L., she did not give reasonable notice to M.L., she did not surrender M.L.'s papers, and she did not refund unearned fees to M.L. in violation of KRPC 1.16(d).

"b. With regard to Mr. Schudel, (DA7739) the Respondent did not 'take steps to the extent reasonably practicable to protect' Mr. Schudel. Additionally, the Respondent did not give reasonable notice to Mr. Schudel. Finally, the Respondent did not return certain papers that Mr. Schudel needed to resolve the legal issue.

"c. Upon terminating her representation of Mr. Dryden (DA7773), the Respondent failed to protect his interests by failing to inform him of a scheduled court hearing. Also, the Respondent failed to give Mr. Dryden reasonable notice of the termination. Finally, the Respondent failed to return Mr. Dryden's file.

"d. When the Respondent abandoned her representation of Mr. Rivers (DA7778), she failed to take reasonable steps to protect Mr. Rivers, by failing to give reasonable notice to Mr. Rivers.

"e. Ms. Kistler's interests were not protected by the Respondent upon the Respondent's termination of services. Specifically, the Respondent failed to return Ms. Kistler's file until commanded to do so pursuant to a subpoena.

"f. The Respondent failed to take reasonable steps to protect Mr. Otto (DA7822). In that case, the Respondent failed to return unused fees.

"g. The Respondent failed to protect Ms. Burger's (DA7836) interests after the representation was terminated. The Respondent failed to return papers and unearned fees to Ms. Burger.

"h. Without providing reasonable notice to Mr. Ivy (DA7862), the Respondent ceased representing him in his divorce proceedings.

"i. The Respondent failed to surrender papers and refund advance payment of fee to Mr. Gerred (DA7867).

"j. In Ms. Morgan's (DA7896) case, the Respondent failed to protect her client's interests by failing to give reasonable notice of the termination of the representation in her divorce proceedings.

"7. An attorney violates KRPC 3.2 if she fails to make reasonable efforts to expedite litigation consistent with the interests of her client. *Id.* The Hearing Panel concludes that, in the following cases, the Respondent violated KRPC 3.2:

"a. In DA7521, the Respondent failed to obtain service on the incarcerated defendant. The Respondent's inaction caused a lengthy delay in the prosecution of the termination of parental rights case filed in M.L.'s behalf.

"b. The Respondent failed to prosecute Mr. Dryden's (DA7773) motion to modify child support. The Respondent's failure resulted in an unreasonable delay in the proceedings.

"c. The Respondent failed to file appropriate pleadings in St. Louis County, Missouri, in behalf of Ms. Kistler (DA7796). As a result, Ms. Kistler's legal action was significantly delayed.

"d. Because the Respondent failed to prepare a simple pleading, Mr. Worley's (DA7820) action to terminate child support has been, and continues to be, unreasonably delayed.

"e. By taking no action in behalf of Ms. Burger (DA7836), the Respondent failed to expedite litigation, in violation of KRPC 3.2.

"f. With regard to DA7862, the Respondent filed a motion, but failed to prosecute it in behalf of Mr. Ivy.

"g. Other than preparing certain documents, and filing the same four months after obtaining Mr. Gerred's (DA7867) signature, the Respondent failed to take any action in defense of the paternity action.

"8. The Respondent also violated KRPC 8.1(b). That rule provides, 'a lawyer in connection with a . . . disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from a disciplinary authority . . . .' *Id.* In DA7521, DA7739, DA7796, DA7820, DA7822, DA7836, DA7862, DA7867, and DA7896, the Respondent failed to provide written responses to the initial complaints. As such, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 8.1(b).

"9. KRPC 8.4(c) provides that it is professional misconduct for a lawyer to 'engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' *Id.* The Respondent falsely informed Ms. Kistler (D.A7796) that she had filed pleadings in behalf of Ms. Kistler in St. Louis County, Missouri. Because the Respondent provided false information to a client, the Respondent engaged in conduct that involved dishonesty. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

"10. Kan. Sup. Ct. R. 207(b) provides as follows:

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

*Id.* Kan. Sup. Ct. R. 211(b) provides, in pertinent part:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

*Id.* In this case, the Respondent violated Kan. Sup. Ct. R. 207(b) and Kan. Sup. Ct. R. 211(b) by failing to provide any written responses to the initial complaints in DA7521, DA7739, DA7796, DA7820, A7822, DA7836, DA7862, DA7896, by failing to provide timely written responses to the initial complaints in DA7773, A7778, and DA7780, and by failing to file a written Answer to the Formal Complaint in all twelve cases. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 207(b) and Kan. Sup. Ct. R. 211(b) with regard to each of the twelve complaints.

## "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated her duties to her clients to provide diligent representation, and to provide reasonable communication, and to preserve and safeguard client property.

"*Mental State.* The Respondent knowingly violated her duties.

"*Injury.* Each of the Respondent's clients were injured. The Respondent's clients did not receive funds for unearned retainers, some of the clients were forced to represent themselves in hearings, and each of the clients' legal matters were significantly delayed by the Respondent's misconduct.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be

imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Dishonest or Selfish Motive.* It was selfish of the Respondent to retain unearned fees. Additionally, in dealing with Ms. Kistler, the Respondent was dishonest. Accordingly, the Hearing Panel finds that the Respondent had a dishonest and selfish motive in committing the misconduct.

"*Pattern of Misconduct.* Included in this case are twelve complaints. Each complainant encountered similar problems with the Respondent. Accordingly, the Respondent engaged in a pattern of misconduct.

"*Multiple Offenses.* The Respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.15(b), KRPC 1.16(a)(3), KRPC 1.16(d), KRPC 3.2, KRPC 8.1(b), KRPC 8.4(c), Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211(b). As such the Respondent committed multiple offenses.

"*Bad Faith Obstruction.* The Respondent responded untimely or failed to respond to inquiries made by the investigators of these matters.

"*Refusal to Acknowledge Wrongful Nature of Conduct.* The Respondent has failed to acknowledge the wrongful nature of her conduct.

"*Vulnerability of Victim.* Each of the Respondent's clients in these cases were vulnerable. Each client sought representation in a domestic matter.

"*Indifference to Making Restitution.* The Respondent has made no attempt to reimburse the complainants for unused retainer fees.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of Prior Disciplinary Record.* The Respondent has not previously been disciplined.

"*Personal or Emotional Problems.* According to the Respondent, during the fall months of 1999, the Respondent's elderly mother, who lives in Nebraska with the Respondent's father, was quite ill. Apparently, the Respondent's mother's medical condition was no longer an issue after January, 2000.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 4.11 and 4.41. Standard 4.11 provides, '[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.' *Id.* In this case, the Respondent retained unearned fees, failed to return the same after requests by clients, new attorneys, and Mr. Badgerow. Retaining unearned fees is tantamount to converting client property.

"Standard 4.41(b) provides:

'Disbarment is generally appropriate when . . . a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client.'

*Id.* Certainly, the Respondent knowingly failed to perform services for each of the complainants. Many of the complainants were seriously injured by the Respondent's misconduct.

"The Hearing Panel unanimously recommends that Respondent be disbarred.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

The respondent did not file exceptions to the final hearing report of the Kansas Board of Disciplinary Attorneys and pursuant to Rule 212(d) (2000 Kan. Ct. R. Annot 254), the findings of fact in the report are deemed to be admitted.

The respondent appeared in person before the Kansas Supreme Court on March 8, 2001, and, as is allowed by Rule 212(d), made a statement with respect to the discipline to be imposed. Respondent implored the court not to disbar her stating she entered law school later in her life with the desire to help families. After her admission in Missouri in 1992 and Kansas in 1993, she has worked for Legal Aid and been a sole practitioner primarily engaged in family law.

She recounted the sickness of her mother plus depression and cancer requiring surgery as the reasons for being out of the office in late 1999 and early 2000. During the summer of 2000 her family was forced to move and her files were removed by legal action in Johnson County. She stated that her marriage of 27 years broke up and difficulties with a teenage daughter shortly before her hearing left her unable to appear.

She contends that by the end of 2000, her life has turned around. She is employed by the State of Kansas in a nonlegal capacity doing support enforcement in Wyandotte County. Her marriage is being terminated, but she has reestablished a good relationship with her daughter. She says she misses the law practice and asks that she not be disbarred.

The Disciplinary Administrator continued the recommendation that respondent be disbarred.

The court, being fully advised, finds that the factual findings and conclusions of law of the violations found are supported by clear and convincing evidence and adopts those findings and conclusions. A minority of the court would disbar the respondent, but a majority finds that indefinite suspension is the appropriate discipline.

IT IS THEREFORE ORDERED that Terri Stroh Tweedly be indefinitely suspended from the practice of law in the State of Kansas effective the date of this opinion in accordance with Supreme Court Rule 203(a)(2) (2000 Kan. Ct. R. Annot. 224).

IT IS FURTHER ORDERED that respondent reimburse the client security fund of the State of Kansas for all amounts paid on her behalf as well as all clients who were complainants in these proceedings for such loss or damage that they may have suffered as the result of respondent's neglect of their legal matters.

IT IS FURTHER ORDERED that in the event respondent should seek reinstatement she shall be subject to all reinstatement requirements, including a hearing as required by Supreme Court Rule 219 (2000 Kan. Ct. R. Annot. 274).

IT IS FURTHER ORDERED that in the event the proceedings under Supreme Court Rule 221 (2000 Kan. Ct. R. Annot. 282) have not resulted in protection of all former clients, that respondent comply with Supreme Court Rule 218 (2000 Kan. Ct. R. Annot. 266), that the costs of these proceedings be assessed to the respondent, and that this opinion be published in the official Kansas Reports.